UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARC ANTHONY KING,

                Plaintiff,

v.

MICHAEL BURGESS, et al.,

                Defendants.

_____/

Case No. 1:23-cv-592

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff paid the full filing fee.   Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.15.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants.  However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Oaks Correctional Facility (ECF), Burgess, Erway, Bassett, and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Turner.  The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process and Eighth Amendment claims against Defendant Johnson. Plaintiff's First Amendment retaliation claim against Defendant Johnson remains in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (MSP) Munising, Michigan. The events about which he complains, however, occurred at ECF in Manistee, Manistee County, Michigan. Plaintiff sues ECF, Warden Michael Burgess, Acting Assistant Deputy Warden J. Erway, Resident Unit Manager Kendra Johnson, Grievance Coordinator T. Bassett, and Prison Counselor M. Turner. Plaintiff states that he is suing the individual Defendants in their personal capacities. (Compl., ECF No. 1, PageID.2, 5.)

Plaintiff alleges that he was transferred from the Marquette Branch Prison (MBP) to ECF on August 16, 2022, in lieu of a custody reduction to Level IV.  Plaintiff states that there has been a Special Problem Offender Notice (SPON) indicating that Plaintiff should not be transferred to ECF since 2006 because Plaintiff had been involved in a serious assault on staff there.  Upon his arrival at ECF, the property officer issued Plaintiff his Clear Tech 13-inch digital LED television, which is an allowable appliance for prisoners in segregation.  However, Plaintiff was not issued a cable cord, which is required for reception.  Therefore, Plaintiff was unable to use his television.

4

Plaintiff asked Resident Unit Officer Brown (not a Defendant) for a cable cord but was told that Defendant Johnson was the only person who passed out cable cords. On August 17, 2022, Plaintiff asked Defendant Erway about getting a cable cord, and Defendant Erway asked Defendant Johnson, who was present, about the cable cords. Defendant Johnson stated that Plaintiff would not be watching television in her segregation unit after he had assaulted her friends.

After shift change, Plaintiff asked Resident Unit Officer Frank (not a Defendant) for a cable cord and was told that Defendant Johnson was the only one who could give out cable cords.  On August 19, 2022, while Sergeant Johnson (not a Defendant) was making rounds, Plaintiff explained that he could not watch his television without a cable cord.  Sergeant Johnson told Plaintiff to get out of his cell and find one, but Plaintiff explained that would be an attempted escape.  Sergeant Johnson then told Plaintiff to figure it out and that if Plaintiff had made the Resident Unit Manager mad, it was his "ass."  (*Id.*, PageID.7.)

After numerous attempts to address the situation verbally, Plaintiff filed a grievance on August 21, 2022.  As the days passed, Plaintiff observed Defendant Johnson and other staff giving cable cords to other prisoners.  Plaintiff states that other prisoners in the segregation unit were allowed to use the cords to watch television.  Plaintiff asked Corrections Officer Puffer, numerous sergeants, and Lieutenant Makey (all non-Defendants) for a cable cord, but they all told him that Defendant Johnson had said that Plaintiff had "nothing coming" because of his past assault on staff and that he would be lucky to leave ECF alive.  (*Id.*)

Plaintiff states that when he asked Sergeant Baker (not a Defendant) about a cable cord, Baker told Plaintiff that if he kept asking for a cord, Baker would come into Plaintiff's cell and break his television because Defendant Johnson had said that Plaintiff "ain't got nothing coming" at ECF.  (*Id.*)

Plaintiff states that he often spoke with Defendant Turner during legal mail rounds.  Plaintiff states that after a few weeks, he began to suffer from severe anxiety, as well as from nausea and headaches.  Plaintiff explained to Defendant Turner that he was a designated segregation prisoner, not punitive segregation, and that he had not had any misconducts the previous year.  Plaintiff showed Policy Directive 04.05.120 and 04.07.112 to Defendant Turner and explained that denying him a television was contrary to policy.  Defendant Turner told Plaintiff that he wanted to give him a cable cord, but Defendant Johnson would not allow it.  Defendant Turner stated that he did not know why Defendant Johnson was so angry with Plaintiff, but that Johnson would not allow staff to do anything for Plaintiff.

At some point, Plaintiff sought medical treatment from Health Care, but his kite was not processed. Plaintiff filed a grievance on Health Care on September 30, 2022. On October 5, 2022, Plaintiff kited mental health services because he was suffering from mental deterioration. Plaintiff filed a second kite seeking medical care on October 6, 2022, complaining of dizziness and nauseousness. Plaintiff was seen by mental health services on October 14, 2022, but his complaints were ignored and he was merely offered crossword puzzles.

Plaintiff filed a grievance regarding the refusal to provide him with a pillow on September 22, 2022.  Plaintiff states that he had been at ECF for more than a month and had made numerous requests for a pillow, to no avail.  Plaintiff contends that during his September Security Classification Committee (SCC) interview he saw approximately five boxes of pillows in Defendant Johnson's office.   During the interview, Defendant Johnson told Plaintiff that if he did not stop writing kites and grievances, she would make sure he never got out of segregation.  Defendant Johnson also stated, "any time a black motherf**ker hits one of my officers that son-of-a-b*tch has nothing coming."  (*Id.*, PageID.10 (asterisks in original).)  Defendant Johnson then asked if Defendant Erway recalled when they used to make a prisoner cry for his mother if he assaulted an officer.  Defendant Erway responded that there are too many cameras now, and Defendant Johnson stated that she would deal with Plaintiff in her own way.  (*Id.*)  Plaintiff's grievance regarding the denial of a pillow was not processed.

On October 3, 2022, Defendants Erway and Johnson responded to Plaintiff's August 21, 2022, grievance by stating that cable cords were not allowable segregation property and would not be provided by staff. Plaintiff spoke to Defendant Burgess on October 13, 2022, and complained about the lack of a cable cord.  Defendant Burgess told him that she did not want to step on staff toes and that she had looked through Plaintiff's file and noted his prior assaults on staff, stating "we don't play that here." (*Id.*, PageID.9.)  Plaintiff filed a grievance appeal to step II, which was denied by Defendant Burgess on October 26, 2022.  In the step II response, Defendant Burgess

stated that the Prisoner Benefit Fund had opted not to fund cable/satellite programming in the segregation unit and that antennas were not allowed due to safety concerns.  (*Id.*)  Plaintiff states that the step II response was false because other prisoners received cable cords and were allowed to use their televisions.

On September 27, 2022, Plaintiff wrote to the Office of Legislative Corrections Ombudsman and to Defendant Burgess' office complaining that his grievances were not being processed, complaining of retaliation, and requesting an investigation.  On September 28, 2022, Plaintiff filed a grievance on Defendant Bassett for failing to process grievances, but this grievance was not processed.  On September 30, 2022, Plaintiff wrote to the Inspector's office and MDOC Internal Affairs requesting an investigation.  Plaintiff received a memo from Defendant Burgess' office on October 6, 2022, stating that Defendant Bassett had verified that all grievances received in his office from Plaintiff had been processed.  Plaintiff was placed on suicide watch on October 17, 2022.  Plaintiff alleges that Defendant Turner reviewed institutional camera footage which showed that no food tray entered Plaintiff's cell from October 11, 2022, to October 17, 2022.  On October 21, 2022, Plaintiff was removed from suicide watch with a promise from Defendant Erway that Plaintiff would "be given what he had coming."  (*Id.*, PageID.13.)  Plaintiff states that the promise was never fulfilled.

On October 23, 2022, Plaintiff filed a grievance regarding the physical and mental pain inflicted on Plaintiff by the named Defendants, which Plaintiff states qualifies as assault. Plaintiff states that EEG studies show that a lack of social

8

interaction for a period of a week or more can cause harm to the human brain equivalent to that of a traumatic injury.  Plaintiff also contends that a study by neuroscientist Richard Smeyne at Thomas Jefferson University revealed that after one month of social isolation, neurons in sensory and motor regions of the brain had shrunk by twenty percent.  Plaintiff asserts that the MDOC limits punitive isolation to ten days, but that he was held in the equivalent of punitive segregation for one-hundred and fifty-three days.  Plaintiff states that this constitutes an assault.  Plaintiff states that this and several other grievances were not processed.

Plaintiff submitted a kite to Defendant Turner seeking the whereabouts of his grievances on October 25, 2022, but Defendant Turner never responded.  On October 26, 2022, Plaintiff submitted a kite to Defendant Bassett explaining the memo from Defendant Burgess' office and attaching the goldenrod copy of his grievance, asking that the grievance be processed. Defendant Basset merely returned it to Plaintiff with the response that all of Plaintiff's grievances which had been received in his office had been processed.

Plaintiff states that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations,

9

a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive

rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Defendant ECF

ECF is not a separate entity capable of being sued.  As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners.  They are not the proper public entity for suit."  *Id.* at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued.  Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action.  Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, § 1983 expressly requires that a named defendant be a "person."  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the

MDOC is not a "person.").  And, obviously, because ECF is not an entity separate from the MDOC, it is not a "person" under § 1983 either.  *See, e.g., Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same).  Therefore, Plaintiff's claims against Defendant ECF are properly dismissed.

## B.    Due Process

Plaintiff asserts that while he was confined at ECF, he was kept in conditions which mirrored those in punitive segregation because of his inability to watch television, even though he was only classified to administrative segregation.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano,* 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), *overruled on other grounds by Edwards v. Balisok*, 520 U.S. 641 (1997), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484–86.  Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant).  The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest.  *See, e.g.*, *Baker*, 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding).  *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest);

*Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

In this case, Plaintiff was apparently involved in an assault on prison staff while at ECF in 2006.  Plaintiff appears to concede that he is properly being housed in administrative segregation but asserts that the fact that he was not allowed to use his television or to have a pillow for a period of one-hundred and fifty-three days while at ECF transformed his segregation into a confinement which constituted an atypical and significant hardship.  Plaintiff's inability to watch television or to use a pillow while confined at ECF does not constitute an atypical and significant hardship.  *See Smith v. Deemer*, 641 F. App'x 865, 868 (11th Cir. 2016) (deprivations such as a writing surface, a lock for a storage bin, and a television are not so severe relative to regular prison life as to be atypical and significant); *Grady v. Garcia*, 506 F. App'x 812, 814 (10th Cir. 2013) (the denial of radio and television in cell for 105 days is not atypical and significant).   Therefore, Plaintiff's due process claim is properly dismissed.

## C.    Eighth Amendment

Plaintiff first claims that because he could not watch television, his confinement in administrative segregation was more similar to punitive detention. Placement in punitive detention is akin to placement in administrative segregation, except that it is a sanction for major misconduct.  Policy Directive 04.05.120, ¶ E (eff. Oct. 23, 1995).

To the extent that Plaintiff attempts to bring a claim under the Eighth Amendment regarding his lack of a television, his claim fails.   The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the

progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff is denied certain privileges as a result of his time in administrative segregation at ECF, including the use of his television, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Plaintiff also claims that he was denied a pillow while at ECF. However, Plaintiff does not allege that he was not provided with sheets or other bedding, or that he suffered from a medical condition which required the use of a pillow. The Eighth Amendment "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at

349.  Plaintiff does not allege that he suffered any pain or illness due to his lack of a pillow or that he was at any risk of serious harm.  Therefore, Plaintiff's claim that he was denied a pillow does not rise to the level of an Eighth Amendment violation.

### D.     Retaliation

Plaintiff claims that ECF prison officials retaliated against him by denying him television privileges and a pillow, by failing to process his grievances, and by preventing him from leaving segregation.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.     Defendant Johnson

Plaintiff alleges that Defendant Johnson told Plaintiff that if he did not stop filing kites and grievances, she would make sure that Plaintiff never got out of segregation.  At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him.  Although Plaintiff has by

no means proven his claim, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Johnson at this stage in the litigation.

### 2.     Defendants Burgess, Erway, Bassett, and Turner

Throughout Plaintiff's complaint he asserts that he was told by prison officials that he was being denied privileges because of his history of assaulting staff at ECF. Assaulting a prison officer clearly is not protected conduct. *See Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (summarizing Supreme Court cases holding that, although "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea[,"] "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." (internal citations and quotation marks omitted)); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection."); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence.").   Therefore, Plaintiff fails to state a retaliation claim against Defendants Burgess, Erway, Bassett, and Turner.

### E.     Interference with Grievance Process

Finally, to the extent that Plaintiff claims that Defendants interfered with his right to file grievances, such a claim does not implicate Plaintiff's federal rights. Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983);

*Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Nor is Plaintiff's right to petition the government violated by the failure to process or act on his grievances.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure

intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470–71 (6th Cir. 2001).  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim regarding the alleged interference with his right to file grievances.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Defendants ECF, Burgess, Erway, Johnson, Bassett, and Turner will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process and Eighth Amendment claims against Defendant Johnson.  Plaintiff's First Amendment retaliation claim against Defendant Johnson remains in the case.

An order consistent with this opinion will be entered.


Dated:  July 22, 2024                    /s/ Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge